

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,<br><br>Defendants. | Civil Action No. 15-3268 (PGS)<br><br>Stipulated Final Judgment and Order |

## STIPULATED FINAL JUDGMENT AND ORDER

The Consumer Financial Protection Bureau ("Bureau") commenced this civil action against Defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon") on May 12, 2015 to obtain injunctive relief, damages or other monetary relief, civil penalties, and other relief. The Complaint alleges that from 2004 through 2013, Verizon violated Section 1036(a)(1)(B) of the Consumer Financial Protection Act by charging its wireless customers for unauthorized third-party charges.

The Bureau and Verizon, by and through their respective counsel, have requested that the Court enter this Stipulated Final Judgment and Order ("Order").

### FINDINGS

1. This Court has jurisdiction over the parties and the subject matter of this action.

1

2. The Bureau and Verizon agree to the entry of this Order, without adjudication of any issue of fact or law, to settle and resolve all matters in this dispute arising from the conduct alleged in the Complaint to the date this Order is entered.

3. Verizon neither admits nor denies any allegations in the Complaint, except as specifically stated in this Order. For purposes of this Order, Verizon admits to the facts necessary to establish the Court's jurisdiction over Verizon and the subject matter of this action.

4. Verizon waives all rights to seek judicial review or otherwise challenge or contest the validity of this Order. Verizon also waives any claim it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order. Each party will bear its own costs and expenses, including without limitation, attorneys' fees.

5. Entry of this Order is in the public interest.

## DEFINITIONS

The following definitions apply to this Order:

6. **"Account Holder"** means any individual or entity who is or was responsible for paying all charges associated with all lines on that individual's or entity's mobile phone account with Verizon.

7. **"Bill"** means a Consumer's mobile telephone bill or prepaid mobile account, as applicable.

8. **"Block"** means a restriction placed on a Consumer's account that prevents one or more lines from being used to purchase Third-Party Products and from being billed for Third-Party Charges on a Consumer's Bill or Prepaid Account.

9. A statement is "**Clear and Conspicuous**" if it is disclosed in such size, color, contrast, location, duration, and audibility that it is readily noticeable, readable, understandable, and capable of being heard. A statement may not contradict or be inconsistent with any other information with which it is presented. If a statement materially modifies, explains, or clarifies other information with which it is presented, then the statement must be presented in proximity to the information it modifies, explains, or clarifies in a manner that is readily noticeable, readable, and understandable, and not obscured in any manner. In addition:

   i. An audio disclosure must be delivered in a volume and cadence sufficient for a Consumer to hear and comprehend it;

   ii. A television or internet disclosure must be of a type size, location, and shade and remain on the screen for a duration sufficient for a Consumer to read and comprehend it based on the medium being used;

   iii. Disclosures in a print advertisement or promotional material, including but without limitation a point-of-sale display or brochure materials directed to Consumers, must appear in a type size, contrast, and location sufficient for a Consumer to read and comprehend it; and

   iv. A text-message disclosure must be of a format, to the extent controlled by the sender, so that Consumers can notice and read it on their mobile devices, and hyperlinks included as part of the text message should be clearly labeled or described.

10. "**Commercial PSMS**" means the use of PSMS to bill for Third-Party Products.

11. **"Consumer"** means a current or former Verizon customer, subscriber, or purchaser of Third-Party Products for which Third-Party Charges are or were placed on the Consumer's Bill or Prepaid Account, whether that person is the individual responsible for paying the Bill or Prepaid Account, or has a device that is billed to a shared account. "Consumer" does not include any business entity or any state, federal, local, or other governmental entity, if (1) the business entity or government, and not the employees or individuals working for or with that business entity or government, is solely liable to Verizon for payment of all charges placed on that account, and (2) the ability to process Third-Party Charges through that account is not available unless the business entity or government affirmatively requests that certain or all mobile devices be provided the ability to authorize placement of such Third-Party Charges.

12. **"Consumer Redress Period"** or **"Redress Period"** means the period beginning on May 12, 2015and ending March 31, 2016.

13. **"Effective Date"** means the date that this Order is entered by this Court.

14. **"Enforcement Director"** means the Assistant Director of the Office of Enforcement for the Consumer Financial Protection Bureau, or his delegate.

15. **"Express Informed Consent"** means an affirmative act or statement giving unambiguous assent to be charged for the purchase of a Third-Party Product that is made by a Consumer after being provided a Clear and Conspicuous disclosure of material facts.

16. **"Newly Acquired Entities"** means any entities Verizon acquires in the future.

17. **"Participating States"** means Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois,

Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming, and the District of Columbia.

18. **"Premium Short Messaging Service"** or **"PSMS"** means a service that distributes paid content to a Consumer using the Short Message Service and Multimedia Messaging Service communication protocols via messages that are routed using a Short Code, resulting in a Third-Party Charge.

19. **"Prepaid Account"** means a Consumer's account for wireless service where funds first must be applied to the account, and usage charges deducted from those funds.

20. **"Related Consumer Action"** means a private action filed in court or before an arbitral body by or on behalf of one or more consumers or an enforcement action by another government agency brought against Verizon based on substantially the same facts as described in the Complaint. For purposes of this Order, the Assurances of Discontinuance entered into by Verizon and the Participating States and the Federal Communications Commission ("FCC") Order are not Related Consumer Actions.

21. **"Short Code"** means a common code leased from the CTIA Common Short Code Administration that is comprised of a set of numbers, usually 4 to 6 digits, which text messages can be sent to and received from using a mobile telephone.

22. **"Third Party"** means an entity or entities, other than Verizon, that provide a Third-Party Product to Consumers for which charges are placed on Bills.

5

23. **"Third-Party Charge"** means a charge for the purchase of a Third-Party Product placed on a Consumer's Bill.

24. **"Third-Party Product"** means content or services offered or sold by a Third Party that can be used on a mobile device, for which charges are placed on the Consumer's Bill or deducted from a Prepaid Account by Verizon. "Third-Party Product" excludes contributions to charities, candidates for public office, political action committees, campaign committees, campaigns involving a ballot measure, or other similar contributions. "Third-Party Product" also excludes white label products and co-branded or co-marketed products where goods and services are offered or sold jointly and cooperatively by Verizon and a Third Party, where the charge for such goods or services is placed on the Consumer's Bill; and where Verizon is responsible for accepting complaints, processing refunds, and other communications with the Consumer regarding the charge. "Third-Party Product" also excludes equipment protection services, including mobile device insurance and extended warranty offerings.

25. **"Unauthorized Third-Party Charge"** means a Third-Party Charge placed on a Consumer's Bill or deducted from a Prepaid Account without the Consumer's Express Informed Consent.

26. **"Verizon"** means Cellco Partnership d/b/a Verizon Wireless, including all successors and assigns.

# ORDER

## I.  Conduct Provision

27.  *Commercial PSMS*: Verizon will not make available to Consumers the option to purchase Third-Party Products through Commercial PSMS or bill charges for Commercial PSMS.

## II.  Compliance

28.  *Authorization of Third-Party Charges*: Verizon will obtain Express Informed Consent before a Consumer is charged for any Third-Party Charge or before funds are deducted from a Prepaid Account. The Consumer's Express Informed Consent may be provided to Verizon or to another person or entity obligated to Verizon to obtain such consent. Verizon or the other person or entity obligated to obtain such consent will retain sufficient information to allow such consent to be verified. If Express Informed Consent is not directly collected by Verizon, Verizon will implement reasonable policies and practices to confirm that Express Informed Consent will be appropriately collected and documented by the person or entity obligated to do so, and will monitor and enforce those policies and practices to confirm that Express Informed Consent is appropriately collected and documented, and where Express Informed Consent has not been appropriately collected and documented, will require remedial action (which may include, for example, suspension, proactive credits, or retraining), or cease billing for such charges. For purposes of §II, for charges incurred through operating system storefronts, such reasonable policies and practices may, for example, consist of Verizon or its agents making a statistically valid random sample of purchases to demonstrate whether the storefront is collecting Express Informed Consent consistent with this Order. Such policies and practices will be fully implemented by Verizon no later than

July 1, 2015. While the system described by this Paragraph is being developed and implemented, Verizon will take reasonable steps to obtain Express Informed Consent before a Consumer is billed for any Third-Party Charge.

29. *Purchase Confirmation for Third-Party Charges*: Beginning no later than July 1, 2015, Verizon will implement a system whereby the Consumer (and, for multiline accounts, the Account Holder, if designated) will be sent a purchase confirmation, separate from the Bill of every Third-Party Charge, including recurring charges, that will appear on his or her Bill. Such purchase confirmation will be sent within a reasonable time following the purchase of a Third-Party Product or the recurrence of a Third-Party Charge, and will identify Blocking options that Verizon makes available to Consumers or provides access to such information or both. For multiline accounts, Verizon may provide the Account Holder the option to elect not to receive such purchase confirmations for purchases made on other lines.

30. *Information on Blocking*: Beginning no later than July 1, 2015, Verizon will:

   i. At no charge to the Consumer, offer Blocking of Third-Party Charges; and

   ii. Provide a Clear and Conspicuous disclosure about Third-Party Charges and Blocking options in informational material provided to Consumers at or near the time of subscribing to or activating service, and in the case of postpaid service which is provided in a context separate from the actual subscriber agreement document and in the case of prepaid service, is included in the disclosures provided at the time of purchase. Such disclosure will include or provide access to a description of Third-Party Charges, how Third-Party Charges

8

appear on Bills and Prepaid Accounts, and options available to Consumers to Block Third-Party Charges. Consumers will not incur any data or text charges for receiving or accessing the information discussed in this Paragraph.

31.   *Billing Information and Format*: No later than September 1, 2015:

  i.   Except for Prepaid Accounts, all Third-Party Charges will be presented in a dedicated section of the Consumer's Bill (or in a dedicated section for each mobile line on the account, if the Bill sets forth charges by each line) and will all be set forth in such a manner as to distinguish the Third-Party Charges contained therein from Verizon's service, usage, and other charges. This section of the Consumer's Bill will contain a heading that Clearly and Conspicuously identifies that the charges are for Third-Party Products; and

  ii.   The Third-Party Charge billing section required by this ¶ 31 will include a Clear and Conspicuous disclosure of a Consumer's ability to Block Third-Party Charges, including contact or access information that Consumers may use to initiate such Blocking. If Verizon includes a Third-Party Charge billing section for each mobile line on the account, Verizon will have the option to include the disclosure of a Consumer's ability to Block Third-Party Charges in only the first Third-Party Charge billing section that appears on the Bill, rather than in all Third-Party Charge billing sections.

32.   Consumer Contacts: When a Consumer contacts Verizon with regard to a Third-Party Charge incurred after the Effective Date, or a Block, Verizon will:

  i.   Provide the Consumer with access to a customer service representative who has access to the Consumer's account information for at least the prior 12 months;

      ii.      beginning no later than September 15, 2015, for any Consumer who claims he or she did not authorize a Third-Party Charge incurred after the Effective Date:

      1.      For disputed Third-Party Charges (either a single charge or a recurring charge) initially incurred within the prior 12 months, either (1) provide the Consumer a full refund or credit of any and all disputed Third-Party Charges not previously credited or refunded to the Consumer, or (2) deny a refund if Verizon has information demonstrating that the Consumer provided Express Informed Consent to the Third-Party Charge, offers to provide such information to the Consumer, and, upon request, provides such information to the Consumer.

      2.      For disputed Third-Party Charges (either a single charge or a recurring charge) initially incurred more than 12 months prior to when the Consumer contacted Verizon, within 10 business days from receipt of the claim, either (1) provide the Consumer a full refund or credit of any and all disputed Third-Party Charges not previously credited or refunded to the Consumer, or (2) deny a refund if Verizon has information demonstrating that the Consumer provided Express Informed Consent to the Third-Party Charge, offers to provide such information to the Consumer, and, upon request, provides such information to the Consumer. This subparagraph 32(ii)(2) will expire 4 years from the Effective Date.

      iii.      if the Consumer claims that he or she did not authorize a Third-Party Charge, and the Consumer is a current customer of Verizon, offer the Consumer the opportunity to Block future Third-Party Charges;

   iv. not require the Consumer to first contact the Third Party in order to receive a refund or a credit of any claimed Unauthorized Third-Party Charge, although this subparagraph does not prohibit asking the Consumer if he or she has contacted the Third Party or if the Consumer has already received a credit or refund from the Third Party for some or all of the claimed Unauthorized Third-Party Charge.

33. *Training*: Verizon will, for at least 6 years from the Effective Date, conduct a training program with its customer service representatives, at least annually, to administer the requirements of this Order. To the extent that Verizon no longer permits Third-Party Charges on Consumers' Bill or the deduction of Third-Party Charges on Consumers' Prepaid Accounts, Verizon will conduct one training program within 3 months of such cessation and will have no further obligation to conduct training programs under this Paragraph.

### III. Redress

34. Verizon or Verizon's agent will administer redress to Consumers subject to Bureau oversight.

35. Verizon submitted to the Enforcement Director for review and nonobjection a comprehensive written plan for providing redress consistent with this Order ("Consumer Redress Plan"). The Enforcement Director has made a determination of nonobjection to the Consumer Redress Plan. Verizon must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Consumer Redress Plan.

36. Verizon will provide refunds under the Consumer Redress Plan of at least $35,000,000, not to exceed $70,000,000 (the "Redress Amount"), to all Consumers

entitled to a refund. Once Verizon pays at least $35,000,000 in refunds to Consumers, Verizon may claim a $16,000,000 credit for refunds previously paid to Consumers by Verizon. If the Redress Amount still has not been exhausted after the $16,000,000 credit for refunds is applied, Verizon may claim an additional $5,000,000 credit for costs associated with administering redress to Consumers.

37. At the end of the Consumer Redress Period, after completing the Consumer Redress Plan, and after claiming the credits described in ¶ 36, if the Redress Amount has not been exhausted, Verizon will pay to the Bureau or the Bureau's agent, by wire transfer, and according to the Bureau's wiring instructions, the remaining Redress Amount.

38. If the Bureau determines, in consultation with the Participating States and the FCC, that additional redress to Consumers is wholly or partially impracticable or otherwise inappropriate, or if funds remain after additional redress is completed, the Bureau, in its sole discretion may apply any remaining funds for such other equitable relief, including consumer information remedies, as determined by the Bureau to be reasonably related to the violations described in the Complaint. Any funds not used for such equitable relief will be deposited in the U.S. Treasury as disgorgement. Verizon will have no right to challenge any actions that the Bureau or its representatives may take under this Paragraph.

39. Verizon may not condition the payment of redress to any Consumer under this Order on that Consumer waiving any right.

**IV.  Additional Monetary Provisions**

40. In the event of any default on Verizon's obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on

any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

41.  Under 31 U.S.C. § 7701, Verizon, unless it already has done so, must furnish to the Bureau its taxpayer identifying numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

42.  Within 30 days of the entry of a final judgment, consent order, or settlement in a Related Consumer Action, Verizon must notify the Enforcement Director of the final judgment, consent order, or settlement in writing. That notification must indicate the amount of redress, if any, that Verizon paid or is required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid.

## V. Reporting Requirements

43.  Verizon must notify the Bureau of any development that may affect its compliance obligations arising under this Order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary or parent that engages in any acts or practices subject to this Order, the filing of any bankruptcy or insolvency proceeding by or against Verizon; or a change in Verizon's name or address. Verizon must provide this notice at least 30 days before the development or as soon as practicable after the learning about the development, whichever is sooner.

44.  Verizon designates the following points of contact, which the Bureau may use to communicate with Verizon regarding this Order:

Michelle L. Rogers
BuckleySandler LLP
1250 24th Street NW
Suite 700
Washington, DC 20037
mrogers@buckleysandler.com

Robert L. Ernst
Verizon Wireless
One Verizon Way
VC54N068
Basking Ridge, NJ 07920
Robert.l.ernst@verizon.com

45. The Bureau, in consultation with the FCC and the Participating States, may engage a third-party independent auditor ("Auditor"), which will not be a governmental entity, to review and report on administration of the Consumer Redress Plan. Verizon will provide all records and information requested by the Auditor, and will require any third-parties it engages to administer the program to also do so. Upon the Auditor's request, Verizon may share any Consumer information relating to a Third-Party Charge with the Auditor. The cost of the Auditor's review will be paid from the Redress Amount.

## VI. Order Distribution and Acknowledgment

46. Within 30 days of the Effective Date, Verizon must deliver a copy of this Order to each of Verizon's board members and executive officers.

47. For 5 years from the Effective Date, Verizon must deliver a copy of this Order to any business entity resulting from any change in structure described in § V, any future board members and executive officers before they assume their responsibilities.

48. Verizon must secure a signed and dated statement acknowledging receipt of a copy of this Order, ensuring that any electronic signatures comply with the

requirements of the E-Sign Act, 15 U.S.C. § 7001 et seq., within 30 days of delivery, from all persons receiving a copy of this Order under this Section.

### VII. Recordkeeping

49. Verizon must create and maintain for 5 years from the Effective Date all documents and records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Bureau.

### VIII. Notices

50. Unless otherwise directed in writing by the Bureau, Verizon must provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line, *Cellco Partnership d/b/a Verizon Wireless,* Case no. 15-cv-3268 and send them to:

> Assistant Director for Enforcement
> Consumer Financial Protection Bureau
> ATTN: Office of Enforcement
> 1700 G Street, NW
> Washington, DC 20552
>
> Enforcement_Compliance@cfpb.gov

### I. Cooperation with the Bureau

51. Verizon must cooperate fully to help the Bureau determine the identity and location of, and the amount of injury sustained by, each Consumer. Verizon must provide such information in its or its agents' possession or control within 14 business days of receiving a written request from the Bureau.

### II. Compliance Monitoring

52. Within 14 business days of receipt of a written request from the Bureau, Verizon must submit additional compliance reports or other requested information,

which must be made under penalty of perjury; provided sworn testimony; or produce documents.

53. Verizon must permit Bureau representatives to interview any employee or other person affiliated with Respondent who has agreed to such an interview regarding the subject matter of this action. The person interviewed may have counsel present.

54. Nothing in this Consent Order will limit the Bureau's lawful use of civil investigative demands under 12 C.F.R. § 1080.6 or other compulsory process.

### III. Release

55. The Bureau releases and discharges Verizon from all potential liability for law violations that the Bureau has or might have asserted based on the practices alleged in the Complaint, to the extent such practices occurred before the Effective Date and the Bureau knows about them as of the Effective Date. The Bureau may use the practices alleged in the Complaint in future enforcement actions against Verizon or its affiliates to establish a pattern or practice of violations or the continuation of a pattern or practice of violations or to calculate the amount of any penalty. This release does not preclude or affect any right of the Bureau to determine and ensure compliance with this Order, or to seek penalties for any violations of this Order.

### IV. Modifications to Non-Material Requirements

56. Verizon may seek a modification to non-material requirements of this Order (*e.g.*, reasonable extensions of time and changes to reporting requirements) by submitting a written request to the Enforcement Director.

### V. Retention of Jurisdiction

57. The Court will retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**IT IS SO ORDERED.**

Dated this 14 day of May, 2015

_____
United States District Court Judge